Case 15-6134 Cheryl Sinclair v. Lauderdale County, TN et al. Oral Argument, 15 minutes per side. Mr. Riley-Hutton for the appellate. Your Honor, may I reserve three minutes for rebuttal? Certainly. Please proceed. May it please the Court. Cheryl Sinclair spent over 37 years in prison. She spent 10 days in jail for a crime that she did not commit. You haven't made any claim on that basis, have you? Yes, Your Honor. Well, the claim we've made, we've made two claims under the Fourth Amendment, a false arrest claim and a malicious prosecution claim, both arising out of her arrest and detention in the Lauderdale County jail. There's nothing about failure to bring her properly before Her Majesty? Well, Your Honor, the claims under the Fourth Amendment, which prohibits unreasonable searches and seizures, basically both the false arrest and malicious prosecution, that she could not be seized or detained without probable cause. So that's both an element of both the probable cause claim and the malicious prosecution claim. And, Your Honor, there are three primary reasons why, well, this Court boils down to a primary issue of whether or not references in a letter without any further investigation establish probable cause to charge Cheryl Sinclair with accessory after the fact to escape. Was he ever charged with escape, Stephen? With Stephen Sinclair, Your Honor, I believe that was ultimately dismissed. That's not in this particular record, but I happen to know that from the case that he was not charged with escape because he could not under tenancy law. But that is not in the record. I don't want to stray from the record in this case. Your Honor. Well, I should think you'd make the argument that your client can't be charged with accessory to escape if he wasn't charged with escape. Well, Your Honor, again. I can't find that he was. I'm just, I'm not sure. In this case, Mrs. Sinclair was arrested, dismissed at her first court appearance 37 days later. The legal focus that we're focusing on is that she never should have been seized. She was canning peaches at her home. She was grabbed. She was thrown in jail. The first court appearance, she was dismissed. So the legal question under the Fourth Amendment for both of our theories boils down to the issue of whether or not there was probable cause to arrest and detain her. That then in turn boils down to this one letter because there are three things that are admitted in this particular case. Number one, Cheryl Sinclair is absolutely innocent. She had nothing to do with her son's decision to leave the drug treatment program. Number two, the only evidence that they had that implicated Cheryl Sinclair anything was this letter. That is an admission and the answer. The letter was it. And third, they did absolutely no investigation. Now if we think about the context of this letter, we know her son Stephen had been court ordered to a drug treatment program. He got a weekend pass. And rather than return when he should, he went and spent the night with his girlfriend. His girlfriend brought him back to the center the next day. Two days later, the program secretary writes a letter to his probation officer to inform the probation officer he's not in treatment. There are two references in that letter from an unidentified source that say, oh, he came with his mother to see Pastor Rose, the director, and then they went to the office. Well, the first argument is even though she had nothing to do with it, even if you take those references as true, they don't establish a crime. An accessory after the fact to escape requires someone knowing that there was an escape then to aid, to abet, to further that person with the intent of having them avoid prosecution or punishment. The problem is those references are just as consistent with perfectly innocent behavior. I mean, suppose the facts were Cheryl Sinclair got a call from her son saying, Mom, I really messed up. I was supposed to go back to treatment, but I went and spent the night with my girlfriend. Any reasonable parent would say, Son, I'm going to go with you. We're going to go try to talk to the director. Maybe he'll take you back. You need treatment. But if not, you're a grown man. You're going to have to deal with the consequences of it. There's nothing about the references in that letter that would lead one to believe that the crime occurred. Secondly... Well, they go... I'm sorry. Yes, Judge White. That they left and they went to the center, right? And then at the center... It doesn't say. We don't know. Judge White... Because he was rude. Well, there are two things. We're focusing on what Cheryl Sinclair did. And actually, here the district court's opinion made an error because the judge's opinion says they left the center. It does not say that. It says they came to the office where Pastor Rose was to talk to him. He wasn't there. And then it was reported that they went to the center, which is the treatment center. It doesn't say they came in the same car. It doesn't say they left the center together. It doesn't say that they left. Those two naked references are the only references upon which they are charging Cheryl Sinclair. You seem to be... I'm sorry. You seem to be focusing in on the question of whether she actually took him someplace afterwards. But I'm wondering if that's even the proper focus. So let me ask you the question this way. He's supposed to be back at 4 o'clock the prior afternoon, right? Yes. He doesn't show up. Yes. Now, you haven't mentioned this consent order that exists in this file that the investigator, the detective, whoever this guy is, says that he consulted. And that says if you don't show up, you have to go directly to jail. Yes. So he knows that that's what the order says from a judge, right or wrong, that's what the judge says. And he knows that he didn't do that. He didn't come back to the center and he didn't go to jail. That's correct. So then the letter says that, again, incorrectly, but the letter says his mom is driving him around. No, Your Honor, that's incorrect. It says they came... the letter just says, if we look at what the letter says... It says his mother is with him whether it's in the same car or not. All right, you're right. It says that his mother is with him when he's moving around when he's supposed to be at jail. Your Honor, the... Is that right? It does. Now, why... not for purposes of whether she could be convicted. We all agree that none of this should have happened. She can't be convicted. But why is that enough... why is that not enough to justify the actions of the police officer, Albette, ultimately found to be incorrect? Your Honor, first of all, because with respect to Cheryl Sinclair, there's no proof in the record... I mean, Cheryl... there's a question whether or not Stephen had to go back to treatment. But the question is whether Cheryl Sinclair knew that. There's no evidence in the record that she knew he had to immediately go back to the center. The question is, what did Officer Newman know at the time? Now, because, remember, I know there's this... I guess the troublesome part about this is not just what happened. That's troublesome. But what additional obligation would you say was visited upon the police here that they failed to do? I know you say they had to do more investigation, they had to research what an escape is and all of that, but there don't seem to be any cases that say that. Your Honor, well, they have to have a quantum of evidence to lead a reasonable... reasonable trustworthy evidence to lead a reasonable person to believe a crime was committed. Why isn't the order from the judge that says what happens if somebody doesn't show up and the letter, which seems to be from an authentic, reliable source that says that he's seen with his mother, why... just tell us why isn't that enough? Because there's no... number one, there's no evidence that Cheryl Sinclair knew that the... knew that the contents of the order, had ever read that order saying that the defendant had to go back to jail. And the fact is she brought him back to his center. How can you escape from a drug treatment center by a parent accompanying someone to the drug treatment center to talk to the director of the treatment center? You're already on escape status at that point. Your Honor, there's no... any reasonable parent knowing that their son had not returned, and we don't even know that, it could be that she called and said that the son could have called and said, hey, I got an extra day from the judge. I'm just... could you give me a ride back to the center? They arrived, Pastor Rose wasn't there, she dropped him off at the center and said, son, you're going to have to talk to the... you know. Basically what you're saying is before you can charge somebody, you have to go out and talk to them and try to divine what their knowledge was and what their intent was. Maybe that would be a good idea, but it's not the way it works. Your Honor, under this court's jurisprudence, whether it's Ratavansky or Allman or Gartenshaw, under the Fourth Amendment, before you throw somebody in jail, you have to have enough reasonable and trustworthy evidence to lead a reasonable person to believe that a... that a person committed it. Not only do we have that, but the second issue is all of this is double hearsay. Remember, no one talked to Norma Rose. We have a letter, and the letter is reporting what other people said, and the salient hearsay is from an unidentified source. This court's jurisprudence said uncorroborated hearsay from an unidentified source without more is insufficient to establish probable cause. Especially in a tip situation. I mean, you've got a letter from an institution that's been charged with, you know, sort of having a custodial situation for inmates. I mean, it's not an unreliable source. And the letter author is the wife of the guy that runs this facility, right? Well, we assume that that is the case, but Newman did not check that. This is not a tip. You're quoting tip cases. Well, Your Honor, but it's the same point. But suppose that particular letter also said, by the way, it was also reported that Stephen's brother two weeks ago in visiting sold cocaine to one of the residents. Would that be enough to charge the brother with cocaine, selling cocaine? Because Norma Rose is reporting what someone else told her. It's an unidentified source. And the reason we don't accept that kind of evidence is because it's untrustworthy, as we see in this case where somehow a girlfriend was confused with the mother. There's a reason why we don't throw people in jail simply because of hearsay. Aren't you leaving out the fact that the prosecutor told these cops to file the escape charge against her? I mean, that's part of their probable cause situation, isn't it? Your Honor, that would be a frightening determination of probable cause. What part of? Your Honor, probable cause has always been objectively whether there's enough evidence to arrest. If we're going to say that an officer either has probable cause because a prosecutor told him to, that would eviscerate the Fourth Amendment. You wouldn't seek warrants. What if this prosecutor said, not only arrest Cheryl Sinclair, arrest the entire family for escape. Go get Grandma, the brothers, the sisters, with not one shred of evidence. And then somehow they're now insulated because this prosecutor told us to? Remember, these officers are supposed to... Your hypothetical is, without any shred of evidence, there was at least a shred of evidence here. It's the letter from the woman at the facility. Now, we agree it was wrong, but the point is, at what point then did the police officer have a duty to probe further? Your Honor, first of all, our case law establishes that there's something more than reasonable suspicion called probable cause that you have to have to arrest. And under Beck and its progeny, it's reasonable, trustworthy evidence that would lead a reasonable and prudent officer to believe that a crime was committed and this person committed. If a letter... There was an arrest warrant here, right? Well, there was. Was this presented to a neutral magistrate or somebody? No, Your Honor. There was an assistant clerk that signed the record. Normally, there's a defense if there's a determination of probable cause and the affidavit is valid on its face. That was not raised as a defense in this case and for very good reason because if you look at the affidavit, it's required to show if it's a hearsay source what the basis is. When an officer signed the warrant, it doesn't state that. It states it as if it's firsthand knowledge. All I'm asking is did a magistrate approve, did a judicial officer approve an arrest warrant that resulted in her arrest? No, Your Honor. The assistant court clerk signed the warrant and they do it as a rubber stamp basis, although that was not raised as a defense. We would have gotten into that if we had to, but the defense raised what was the proper standard was the probable cause issue because the law is if the warrant is deficient, which it was, you then look at what the probable cause was to begin with. All right. Thank you. Thank you. Good morning. May it please the Court. My name is John York and I represent Lauderdale County Sheriff Steve Sanders and Investigator Clay Newman. So assuming that what this guy did was escape, which is an assumption, when was that escape committed? According to the furlough order, Your Honor. According to what? The furlough order, the consent furlough order that allowed Stephen Sinclair to go to the rehab facility. It required that he immediately report to the Lauderdale County Jail if he were to leave the rehab facility prior to completion. I submit that the escape would have happened sometime around shortly after 4 p.m. on Sunday when he was supposed to have returned. The facility had given him the overnight pass. His mother called that day seeking additional time, and Pastor Rose allowed Mr. Sinclair to stay out until 4 p.m. I believe it's not in the record, but the facility is relatively close to the Lauderdale County Jail, certainly within an hour. So I would say by 5 p.m. on that Sunday, Mr. Sinclair would have committed escape under the furlough order. So she asked for additional time? Yes. On behalf of her son? Yes, Your Honor. The pastor grants that? Yes, Your Honor. So she knows he had to be back at 4 p.m. because the pastor told her that? Yes, Your Honor. And there's more facts in the record that show... Is there any question about... there seems to be an argument here that she had to know that not showing up is going to be classified as escape. I don't know if there's any authority for that, but just out of curiosity, did she know? Was she in court when this was imposed? Yes, Your Honor. I submit that she did know. She was in court when the furlough order was entered, when Mr. Sinclair, her son, was allowed to attend this rehab facility. She asked and received permission from the court to be the party that transported him to the rehab facility. The record also demonstrates that Ms. Sinclair had made several telephone calls to the rehab facility, making arrangements for her son to have this overnight pass to assist in the fundraising that her family was involved in. So, yes, Your Honor, I believe that it is clear that Ms. Sinclair did have some knowledge of the requirements on her son to timely report back to this facility with the overnight pass, as well as the potential penalties of being charged with either escape or failure to appear if he left the facility prior to successfully completing it and not return to the Lauderdale County Jail. So you're saying that the crime would have occurred basically when he left the facility and didn't go directly to the jail? Yes, Your Honor. Okay, but then what is the...the letter says that she was with him before that, when they went to see the pastor, and then it says that they went to the facility. And so even if you assume that she took him there, there hasn't been a crime yet. He went to the facility. Your Honor, he went to the facility late, beyond the time... That's not escape. Your Honor, under the furlough order, that would have been escape because he had not complied with the leave permission that the facility had granted him. But even if the court disagreed that that wasn't the triggering event for the escape, it was approximately two weeks after Mr. Sinclair didn't report back that this warrant was issued for Ms. Sinclair. So there had been a period of time... I think we've got the dates mixed up here. He was supposed to be back on Sunday at 4 o'clock. The letter says that he came to see Pastor Rose on Monday the 28th. My apologies, Your Honor. So he's already been...he's already failed to report back for something short of 24 hours at that point. Correct. It'd be a different result if he had come by the facility before 4 o'clock on Sunday, but this happened on Monday. Certainly, Your Honor. If he had come back at 3 o'clock, I don't think we would have had an argument that he had committed escape at that point. And he wouldn't have committed escape. The escape was when he didn't come back to the facility when he was supposed to and then did not report to the Lauderdale County Jail. That was what triggered the escape. Okay, I'm sorry. Now you're confusing me. Are you saying he already escaped at the point that the mother took him to see the pastor? Your Honor, he was in violation... Yes, are you saying he escaped? I don't contend that he escaped when he returned late to the facility, when he returned on the Monday when he was supposed to have been back on Sunday. The escape happens when he does not report to the Lauderdale County Jail. I think that would have occurred at that same time. He either was supposed to have been... Did he escape when he's AWOL sometime after 4 o'clock on Sunday? Your Honor, he was supposed to have been at one or the other. He was supposed to have been either at the rehab facility by 4 o'clock on Sunday or at the Lauderdale County Jail. And he was at neither. But he was late. He was late, Your Honor. Okay, and you can violate him for that. He could be violated for that. Okay, and you're conceding basically the escape is on Monday when he leaves the facility and doesn't go to the jail. Yes, Your Honor. It certainly isn't an escape on Monday. I believe it's arguably the escape at 4 o'clock on Sunday when he hasn't reported and he's in neither place where he is supposed to be. But certainly when he comes back to the rehab facility on Monday... Okay, and there's no probable cause to believe the mother had anything to do with the Sunday escape, right? Based upon the letter, yes, Your Honor, yes. The letter is about Monday. The letter is about Monday, however, but the letter does indicate that the mother had had contact with Pastor Rose in seeking the overnight pass that the mother, that Ms. Sinclair had. Yes, but if you're saying that that's... I think you might be able to prosecute the mother of every escaped person if that's the case. I mean, surely you're not saying that if all you had was the fact that she had asked for this privilege and then he doesn't show up and then you're going to prosecute her without more, that you're not saying that's probable cause, are you? The fact that she arranged for it? Your Honor, no, not that she made the arrangements for the overnight pass would give probable cause. And if she calls and says, my son hasn't returned yet, can you give him a little more time? Is that probable cause? That's not probable cause when Pastor Rose says, sure, he can come back at 4 o'clock. Okay, and when he doesn't come back at 4 o'clock, is the mother now responsible? Is there now probable cause to believe that she's an accessory to his decision not to come back? Under the facts of this case, based upon the letter that was sent... Well, we haven't gotten to that letter yet. We're still talking about 4 o'clock and he doesn't show up. Potentially, Your Honor. It's hard to say based upon... There's no charge here that she had anything to do with him not coming back at 4 o'clock. Correct. So that's what I'm trying to get at. So we're really talking about Monday. Yes, Your Honor. I mean, that's where the escape clearly... Okay, so now... I'm sorry, Your Honor, I think there's a... go ahead. Well, you keep dragging us back to earlier, so we're talking... Can we talk about Monday? Sure. Okay, so the letter says, if I understand correctly, that there was a phone call on... Now I'm getting myself confused. So the letter says that she shows up with him, right? Yes, Your Honor. At the pastor's, right? Correct, at the facility, yes. Okay. Which is different from the center, right? No, Your Honor. It's the same facility. The next day, he comes back to the facility to talk to the pastor. The pastor isn't there. And the letter says they, presumably he and his mother, then left. That's the basis, correctly or incorrectly, of the charge of her involvement. Correct. That's it. Correct, Your Honor. Do you know if Stephen was ever charged with escape? Your Honor, it's not in the record. It's my understanding that he was charged with the escape. In the deposition of the prosecutor in this case... ...who signed the affidavit charging the mother with accessory to escape, is there any evidence that he knew Stephen had already been charged or was about to be charged with escape? No, Your Honor. The only thing in the record is this parole violation that I can find. And if the officers knew that he was being charged with a parole violation, how could she be accessory to escape? Your Honor, the officer didn't know that he was being charged with a parole violation at that point. My understanding is that the officer understood that Mr. Sinclair was being charged with escape. Ms. Sinclair, which the paperwork he prepared, the warrant that he prepared, was charging the mother with accessory after the fact to escape. It's outside the record. My understanding, and based upon the district attorney's deposition in this case, is that when Ms. Sinclair was brought to court, the son offered to plead and to accept a violation, a probation violation, in exchange for his mother not being prosecuted and to be allowed to go. That's my understanding of the resolution. I am really confused. Okay. First of all, what does this mean? It says he and his mother came by on Monday to see Pastor Rose, but he was not available. It was reported that they left here and went to the center. And Stephen was very ugly and disrespectful. It implies that there were two different places. It's reported they left here and went to the center. What am I missing? Your Honor, You just told me it was the same. That's my understanding, and that's what the record shows in this case, is that the Rose of Sharon is a rehab facility that's on a campus, if you will, that has Mr. Rose's church and a dormitory-type building for people who are residents of the rehab facility program. Okay. So all this letter says is that, then I will infer, that they left the office part and they went to the center part. And he was very disrespectful. And therefore, he has been dismissed. Yes, Your Honor. Where does this... I don't understand. So where is it in here that she is an accessory to escape? Your Honor, I believe that the prosecutor who made this charging decision based that decision on the letter in that the mother, it was believed, we know erroneously, that the mother was with Mr. Sinclair when he returned a day late to the facility and then left the facility, being discharged at the facility, and then never reported to the Lauderdale County Jail. But first of all, this doesn't even tell you, this doesn't even, unless I'm missing something, I mean, this doesn't even say that he left the facility. It says that he was discharged. Yes, Your Honor. He was discharged. He was no longer a part of the program. And the furlough consent order required that if he didn't successfully complete the program, he had to report to the Lauderdale County Jail. Okay. But where do you get that the mother was complicit in his not going to the jail after that? You don't even know when he left from this letter. Based upon the letter, it stated that he was discharged and presumably left the facility with his mother, and then he never reported to the Lauderdale County Jail. And so that's his mother is an accessory to that? Yes, Your Honor. And there isn't even, it doesn't, all it says is that he's dismissed. And it says, this person is saying it's reported that they left here and went to the center and Stephen was ugly and disrespecting. You don't even know that that's, you don't know what happened after that. You have absolutely no idea what happened after that other than the consequence of his being ugly and disrespecting was that he was discharged from the program. Your Honor, what Clay Newman, Investigator Newman knew, based upon what the District Attorney's Office had transmitted, was that Mr. Sinclair had not reported to jail as he was required to do under a court order. That based upon that letter, his mother was with him, his mother had made arrangements for him to have the overnight pass, and it was believed, again erroneously, that his mother was with him when he was discharged and left and never reported to the Lauderdale County Jail. Well, this also, this doesn't even say that. That's an inference. I mean, it doesn't even say, it says he was discharged. We don't, I mean, a place could have a procedure where they say, you know what, this, we're not going to put up with you anymore. And then you go through three levels of review and then the person's discharged. We don't even, you don't even know from this letter when he was discharged. Your Honor, my time's up. Can I answer? You can still answer. Your Honor, I think what's important for the determination of whether there was probable cause is what Investigator Newman did know. He did know that Stephen Sinclair had not reported to the Lauderdale County Jail. He knew that he had been discharged from this program. He wasn't in either of the places that he was supposed to be, pursuant to the court order in this case. And that's where the probable cause for the escape charge for Mr. Sinclair arises from. And those statements about his mother's involvement and her presence with him when he left the facility was enough for him to base probable cause. Again, when he was directed to prepare this warrant by the district attorney's office. Okay, let me ask you one last question. Yes. He was really with the girlfriend? Yes, we know that now, yes. So if this letter had simply said he was with a woman with blonde hair whose name was Carol, and they knew that his girlfriend had blonde hair and her name was Carol, that's probable cause. This letter itself would be probable cause to charge her with accessory to escape. So the mother, Carol, the girlfriend? Carol, the girlfriend. He shows up with the girlfriend to see the pastor. The pastor's not there. And then it's reported that they then show up at the center, the actual center where he's supposed to be. He's rude, disrespectful, and as a consequence, he's discharged. That's your information? That's enough to charge this woman with accessory to escape? If that is the only aspect of that letter that's changed that says when he came back on Monday with his girlfriend, Carol, then no, I don't think that would be enough to charge Carol. But what else do you have? I think if you make the other changes of the references to the mother in that letter to Carol, that that probably would change it to where there was probable cause to charge Carol with accessory to escape. If she arranged for the past to begin with? If Carol was aware of when the past, the hours of the past, if Carol had made phone calls to the pastor seeking additional time, and then if Carol returned to the facility with Stephen Sinclair the next day, hours after he was supposed to have returned, and then left the premises with him, then yes, Your Honor. It doesn't say that. If she had left the facility, as it does say in the letter, then yes, I think that would. No, it doesn't. It was reported they left here and went to the center, and Stephen was very ugly and disrespectful. Where does it say they left together? Where does it say when he left? Your Honor, that's correct. It's an inference that's being made. The inference is based upon him being discharged from the program, which I believe the letter does say that. And that discharge, that, well, okay, the letter comes July 30th. Okay. Thank you. Thank you. Thank you. Judge White and Your Honor, it's admitted in this record that the only evidence, they've admitted in their answer, the only evidence that they have that Cheryl Sinclair did anything was this July 30 letter. That is an admission in the answer. This letter, as Judge White was just discussing with my colleague, doesn't ever say that they left. It's innuendo. Suspicion is not enough to establish probable cause. I would also like to point out a factual error. Newman was ordered by the sheriff to arrest this woman. That is also admitted in the answer. It was an order by the sheriff to arrest them. He didn't know that Ms. Sinclair had ever read that furlough order. Now, it factually is true. You're saying Newman was, oh, the sheriff ordered Newman? Cheryl Sinclair is admitted in the answer because the sheriff had a sticky note that he believed was from the prosecutor wanting her to be arrested. They never talked to Julie Pillow, the prosecutor. Okay, so why would Newman be liable then if he's ordered to arrest somebody? Because an officer that's signing a warrant has to have probable cause. And just as if a young lawyer signs a complaint and knows that there are facts in there that don't comply with Rule 11 but a senior partner tells them to do, the person still has to do, they have to comply with the law. Okay, I'm getting lost now. You said that there was, okay, Newman signed a complaint? Yes, Your Honor. Newman had Ms. Sinclair arrested by signing an affidavit of complaint and getting the deputy clerk to sign it. That complaint is also in the record to Exhibit No. 6, I believe, to the amended complaint. The complaint is conclusory. It doesn't say anything about the letter. It just says Newman say that she committed an accessory after the fact to escape. So it's a defective affidavit of complaint. It doesn't have any facts. It doesn't talk about the letter. That was not so, but the point here is that the sheriff, in fact, it's page ID 134 is where that is. I'm still having, okay, the complaint is? Page ID 134, it's an exhibit, is the affidavit of complaint that Newman signed. Okay, the affidavit of complaint, okay. That Newman signed and he filled out the affidavit. It's supposed to have the basis of the knowledge and whether it's based on hearsay. It doesn't have that. It just says I'm saying this happened. So it's facially defective. The reason it's a probable cause determination is under the law, if you have a facially defective warrant, you go back to what is it, okay, well, what is the probable cause? The only evidence they had was that letter. That was the only evidence they had and they've admitted that Cheryl Sinclair did anything. Okay, but what did Newman know? I mean, if your superior says, in effect, we have evidence, okay, a police officer can rely on what another police officer says. If your superior says to you, we have evidence that this, we have an escape, and the mom assisted, go out and swear two warrants. Your Honor, Judge White, the officer signing the warrant has to have probable cause. The sheriff handed some paperwork to Officer Newman and directed him to arrest her because the prosecutor wanted it. The only paperwork, the only evidence he had that Cheryl Sinclair did anything was the letter from the treatment center. That letter in and of itself is not enough to establish a, it's not reasonable and trustworthy evidence to believe that a crime has been committed. It's not entirely accurate. He was also given the consent order and he was given an analogous indictment charging another individual with escape for leaving the center. Those things may not be adequate in your view, but there's more to it than what you just said. Your Honor, with respect to whether Cheryl Sinclair did anything, those two documents may go to whether or not someone could commit an escape or commit a robbery. The question is, would they have that Cheryl committed this crime, and they've admitted in their answer to paragraphs 53 and 65 that the only evidence they had that Cheryl Sinclair did anything, any conduct by Cheryl Sinclair is this letter. That letter is not enough to deprive a person of her liberty. If it is, then the Fourth Amendment was designed to protect innocent people like Cheryl Sinclair, who was thrown in jail for nothing. Thank you, Your Honor. All right, thank you. The case will be submitted.